IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HCC INSURANCE HOLDINGS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | C.A. No. _____ |
| | § | |
| JOHN WOODBURY | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff HCC Insurance Holdings, Inc. ("HCC") files this Original Complaint against Defendant John "Jack" Woodbury ("Woodbury") and hereby pleads as follows:

## NATURE OF ACTION

1. Woodbury worked as a trusted employee and Senior Vice President, Underwriting Promotions of HCC Specialty Underwriters, Inc. ("HCC Specialty"), an HCC subsidiary, until he resigned last month and went to work for a direct competitor of HCC Specialty – BUA, LLC d/b/a Prize and Promotion Insurance Services ("PPI"), as its Managing Director.

2. At various times during his employment, Woodbury received incentive stock options from HCC. Each time he did so, Woodbury agreed to the terms of the HCC Stock Option Agreement then in effect. Pursuant to the stock option agreements, Woodbury exercised his options and realized a significant gain.

3. The stock option agreements contained "Forfeiture of Option Gain" provisions, in which Woodbury acknowledged that, during his employment, he would be provided with HCC's confidential information. In exchange for the foregoing, as well as in consideration of the stock options at issue and other consideration, Woodbury agreed to repay to HCC the total amount of

option gain he realized if, within the specified time period (which extends until, at least, one (1) year following the termination of his employment), he engaged in certain activities in competition with HCC, including but not limited to engaging in any competitive business.

4. Woodbury, in going to work for a company that competes directly with HCC Specialty, in the same geographic area in which he previously worked for HCC Specialty, breached the stock option agreements. HCC, therefore, brings this action to enforce Plaintiff's rights pursuant to the stock option agreements and seeks actual damages (including repaying of all option gains realized by Woodbury), attorneys' fees and costs.

## PARTIES

5. Plaintiff HCC Insurance Holdings, Inc. is a Delaware Corporation with its principal place of business in Houston, Texas.

6. Defendant Woodbury is an individual, who is a citizen and resident of the State of Maine. Mr. Woodbury waived service of process pursuant to the 2004 Agreement. Pursuant to the 2004 Agreement, Mr. Woodbury may be served by any method or means likely to give Employee notice of any lawsuit or judicial proceeding under this Agreement, including, without limitation, certified United States mail, registered United States mail, express mail of any type, email, hand-delivery or any other form of written notice reasonably calculated to give Employee actual or constructive notice of a lawsuit or judicial proceedings against him or her under this Agreement. Defendant Woodbury may also be served with service of process at 34 Eastfield Road Portland, Maine 04102 or at such place as he may be found.

## JURISDICTION AND VENUE

7. The court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because Plaintiff HCC is incorporated in Delaware and has its principal place of business in

Texas, and Woodbury is a citizen of Maine. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over the defendant, and venue is proper in this Court, because the Stock Option Agreements between HCC and Woodbury provide that exclusive jurisdiction for resolution of any disputes is in the state and/or federal courts of Harris County, Texas and the Southern District of Texas, Houston Division.

## FACTUAL BACKGROUND

9. HCC is the parent company holding certain subsidiaries that do business throughout the United States and internationally, offering a range of specialty insurance products, among other lines of business, relating to accident and health; surety and credit; professional liability; and property and casualty. HCC Specialty is a subsidiary of HCC, offering among other lines, insurance for prizes and promotions, over redemption, and contractual bonuses.

10. Woodbury was a long-time and trusted employee who worked for HCC subsidiary HCC Specialty. In his most recent role, Woodbury served as a Senior Vice President, Underwriting Promotions for HCC Specialty until his resignation, effective June 30, 2016.

11. At various times during his employment, Woodbury entered into stock option agreements by which Woodbury received incentive stock options from HCC.  Each time he did so, Woodbury agreed to the terms of an HCC Incentive Stock Option Agreement, which governed—and continues to govern—the stock option grants.  When Woodbury received stock options on or about November 14, 2001, he agreed to the terms of the Incentive Stock Option Agreement under the HCC Insurance Holdings, Inc., 2001 Flexible Incentive Plan ("2001 Agreement"). **Ex. A.** When Woodbury received stock options on or about April 5, 2007, he

agreed to the terms of the Non-Qualified Stock Option Agreement Under the HCC Insurance Holdings, Inc., 2004 Flexible Incentive Plan (the "2004 Agreement"). **Ex. B.** The 2001 and 2004 Agreements are collectively referred to herein after as the "Stock Option Agreements."

12. Woodbury exercised his options under the Stock Option Agreements throughout his employment and realized a significant total monetary gain as a result.

13. The Stock Option Agreements at issue contained ongoing obligations of Woodbury and contain a "Forfeiture of Option Grant" provision. The Stock Option Agreements express that the purpose of the incentive plans are to attract, retain and reward employees; to increase stock ownership and identification with the Company's interest; and to provide incentive for remaining with and enhancing the value of the Company and its Subsidiaries over the long-term. Woodbury acknowledged as part of the forfeiture provision, that during his employment, he would be provided with HCC's confidential information, including information about HCC's operations, products, services, customer lists, financial data, financial performance, business plans, product development, and product and system configurations. Woodbury acknowledged he was being instructed in the unique business methods of HCC.

14. As consideration for such training and access to confidential information and for the grant of the stock options, Woodbury agreed to repay HCC the total amount of option gain realized if, at any time within one year after termination of the Employee's employment with the Company and all Subsidiaries, "the Employee engages in any activity **in competition with any activity of the Company (or its Subsidiaries),** or inimical, contrary or harmful to the interests of the Company (or its Subsidiaries), including but not limited to:"

\* \* \* \* \* \*

> **(v) directly or indirectly owning, managing, operating, controlling, investing, or acquiring an interest in, or otherwise engaging or participating (whether alone or with any other person or entity as a proprietor, partner,**

> **stockholder, member, director, officer, employee joint venturer, investor, consultant, agent, sales representative, broker or other participant) in any Competitive Business (as hereafter defined) operating in, or soliciting business from, the Company's Market (as hereafter defined) . . .;**

Ex. A at ¶ 13(a) (emphasis in original); 13(a)(v) (emphasis in original); Ex. B at ¶ 13(a) (emphasis added); 13(a)(v) (emphasis in original).

15. Under the Stock Option Agreements:

> "Competitive Business" means any person or entity engaged in a business that produces any of the products or performs any of the services comprising, in whole or in part, the business of the Company and the Subsidiaries and any predecessors or successors of either being conducted during the term of this Agreement and/or on the date of the Employee's termination of employment with the Company and the Subsidiaries.

*Id.* at ¶13(a); Ex. B at ¶ 13(d). "Company's Market" means any geographic region in which the Employee conducted or developed any business on behalf of the Company and/or the Subsidiaries while the Employee was employed by the Company and/or the Subsidiaries. Ex. A at ¶13(a); Ex. B at ¶13(d).

16. Woodbury resigned from HCC Specialty on or around June 30, 2016 and immediately accepted a position as Managing Director at PPI.

17. Upon information and belief, PPI engages in the same insurance-related business endeavor as HCC Specialty, the subsidiary of HCC by which Woodbury was employed. In direct competition with HCC Specialty, PPI promotes itself as insuring prize indemnity, promotion over redemption, and contractual bonuses.

18. Upon information and belief, Woodbury is directly managing, operating, and otherwise engaging in and participating in a Competitive Business operating in or soliciting business from the Company's Market, as those terms are defined in the Stock Option Agreements.

19. Because Woodbury worked for a competitor within one year of separating from HCC in a geographic region where he previously conducted and developed business for HCC, Woodbury violated the Stock Option Agreements. As a result, HCC is entitled to damages, including the repayment of the total amount of option gain Woodbury realized in connection with the stock options governed by the Stock Option Agreements.

## COUNT I

### *BREACH OF WRITTEN CONTRACT*
### *(Breach of the 2001 Agreement)*

20. HCC restates and incorporates by reference all the allegations in the foregoing paragraphs as if fully set forth herein.

21. HCC and Woodbury are parties to a valid and enforceable written contract, the 2001 Agreement, as set forth above.

22. HCC performed all of its conditions precedent and/or other obligations under the 2001 Agreement.

23. Woodbury breached the express terms of the 2001 Agreement. Woodbury violated Paragraph 13 of the 2001 Agreement and failed to pay to HCC the gain realized from his exercise of options granted.

24. Woodbury's breach proximately caused HCC damages in amounts to be established at trial, in that HCC has been deprived of the gain realized from the exercise of the option.

## COUNT II

### *BREACH OF WRITTEN CONTRACT*
### *(Breach of the 2004 Agreement)*

25. HCC restates and incorporates by reference all the allegations in the foregoing paragraphs as if fully set forth herein.

26. HCC and Woodbury are parties to the 2004 Agreement, which is a valid and enforceable contract.

27. Woodbury breached the express terms of the 2004 Agreement. Woodbury violated Paragraph 13 of the 2004 Agreement and failed to pay to HCC the gain realized from his exercise of options granted.

28. Woodbury's breach proximately caused HCC damages in amounts to be established at trial, in that HCC has been deprived gain realized from the exercise of the option.

## DAMAGES

29. Plaintiff seeks damages in the form of all gains from the exercise of options awarded to Defendant pursuant to the Stock Option Agreements in an amount to be proven at trial.

## ATTORNEYS' FEES

30. HCC restates and incorporates by reference all the allegations in the foregoing paragraphs as if fully set forth herein.

31. HCC has incurred and continues to incur attorneys' fees in pursuing its breach of contract claim, including, but not limited to outside counsel fees and expenses. Accordingly, HCC seeks to recover all reasonable attorneys' fees and costs to which it may show itself lawfully entitled pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

## CONDITIONS PRECEDENT

32.     All conditions precedent to the bringing of this action and claims asserted, and any damages arising there under, have been completely performed, fully satisfied and/or waived.

## JURY DEMAND

33.     HCC demands a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request entry of judgment in favor of Plaintiff and against Defendant:

(a)     awarding HCC damages against Defendant in the amount to be proven at trial;

(b)     awarding pre-judgment and post-judgment interest on all amounts owed;

(c)     awarding HCC its costs in bringing this suit;

(d)     awarding HCC reasonable and necessary attorneys' fees; and

(e)     awarding all other relief, at law or in equity, the Court deems necessary and appropriate.

Respectfully submitted,

**BECK REDDEN LLP**

By: ___/s/ *Thomas E. Ganucheau*___
Thomas E. Ganucheau
Texas State Bar No. 00784104
Federal Bar No. 15939
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720
Email: tganucheau@beckredden.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFF HCC INSURANCE HOLDINGS, INC.**

OF COUNSEL:
Joel T. Towner
Texas State Bar No. 24083978
Federal Bar No.  2442971
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:  (713) 951-3700
Facsimile:  (713) 951-3720
Email: jtowner@beckredden.com

ATTORNEYS OR PLAINTIFF
HCC INSURANCE HOLDINGS, INC.